UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY PURNELL,

                    Case No. 14-11107

        Plaintiff,

                    Paul D. Borman

v.                    United States District Judge

CITIMORTGAGE, INC.

        Defendant.

_____/

OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (ECF No. 12)

Plaintiff Beverly Purnell ("Plaintiff") filed her complaint against Defendant

CitiMortgage, Inc. ("Defendant") in 3rd Judicial Circuit Court in Wayne County on February 10,

2014. (ECF No. 1, Compl.). On March 14, 2014, Defendant removed this case to federal court

based on diversity jurisdiction. (ECF No. 1).

Defendant filed a Motion to Dismiss on May 5, 2014 and Plaintiff filed an Amended

Complaint in response to that motion on May 21, 2014. (ECF Nos. 7 & 8). Thereafter,

Defendant withdrew its motion to dismiss. Then, after a stipulated order allowing an extension

of time to respond to the Amended Complaint, Defendant filed the current Motion to Dismiss

pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on June 11, 2014. (ECF No. 12).

Plaintiff then filed a response (ECF No. 13) and Defendant has filed a reply (ECF No. 14).

Plaintiff also filed a sur-reply on July 30, 2014. (ECF No. 15).[1]

---

[1] This case was reassigned to this Court from Judge Lawrence P. Zatkoff on February 12,
2015.

The oral argument on these matters was held on Wednesday, June 17, 2015.  For the following reasons, the Court will grant Defendant's Motion to Dismiss the Amended Complaint.

## I. BACKGROUND

Plaintiff purchased the real property commonly known as 19488 Westmoreland Road, Detroit Michigan 48219 in 1975 (the "Property").  (Am. Compl. ¶ 6).  On or about May 23, 2002, Plaintiff refinanced the property, executing a Note in the amount of $102,515.00 secured by a mortgage with ABN AMRO Mortgage Group, Inc. ("ABN AMRO").  (Def.'s Br., Ex. A, Note; Ex. B, Mortgage).  This mortgage was duly recorded on June 3, 2002 in the office for the Register of Deeds in Wayne County in Liber 36289 on Page 762.  (*Id*.).

Then, in September 2007, ABN AMRO's interest was transferred to Defendant as a result of a merger.  (Ex. C, Certification of Merger; Am. Compl. at ¶ 8).  Plaintiff alleges that CMI failed to ever record this "assignment" of interest in the Property.  (Am. Compl. at ¶ 9).

In 2010, Plaintiff suffered an economic hardship and contacted Defendant and "requested a loan modification pursuant to the Federal Government's Making Homes Affordable loan modification program ("HAMP")."  (*Id*. at ¶ 10).  Plaintiff contacted the Michigan State Housing Development Authority ("MSHDA") counseling agency to seek help in requesting a loan modification from Defendant.  (*Id*. at ¶ 13).  Thereafter, Plaintiff submitted a request for a "permanent HAMP modification" from Defendant through the MSHDA.  (*Id*. at ¶14).

While Defendant "never actually approved or denied" the request for a HAMP modification, Defendant allowed Plaintiff a "temporary forbearance agreement" and Plaintiff made reduced monthly payments to Defendant from August 2011 through January 2012.  (*Id*. at ¶¶ 15-16).  In February 2012, Defendant refused to accept further reduced payments and did not

2

permanently modify Plaintiff's mortgage.  (*Id*. at ¶17).

On April 4, 2012, Defendant entered into the National Mortgage Settlement, as set forth in a consent judgment in *United States v. Bank of America Corp., et al.*, No. 12-00361 (D.D.C. Apr. 5, 2012).  (*Id*. at ¶ 18).  In July, 2012, Plaintiff again requested a permanent loan modification from Defendant and complied with all of Defendant's requests regarding the same. (*Id*. ¶¶ 20-21).  Defendant allegedly failed to either approve or deny this request and failed to provide Plaintiff with a written notice of denial of the requested modification.  (*Id*. ¶ 23). Plaintiff claims that she was not able to appeal the denial of her loan modification and does not believe she was actually reviewed for a modification.  (*Id*. ¶¶ 24-26)

Defendant proceeded with a foreclosure by advertisement and on March 14, 2013, the Property was sold at a sheriff's sale to Defendant for $115,500.13.  (Am. Compl. ¶¶ 28-29; Ex. D, Sheriff's Deed).  Plaintiff alleges that Defendant failed to provide her proper notice of the sheriff's sale.  (Am. Compl. ¶ 27).

In April 2013, Defendant advised Plaintiff that she would continue to be reviewed for "Loss Mitigation" during the redemption period.  (Am. Compl. ¶ 62).  Plaintiff then submitted a short sale offer to Defendant during the redemption period and that offer was rejected by Defendant after the redemption period had expired.  (*Id*. at ¶ 64).

Four months after the expiration of the redemption period, in February 2014, Plaintiff filed the current action in state court.  On March 14, 2014, Defendant removed the action to this Court.  (ECF No. 1).  Thereafter, Plaintiff filed the Amended Complaint on May 21, 2014 in response to Defendant's previous motion to dismiss.  (ECF No. 8, Am. Compl.).

## II. STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent

4

with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 678. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-556). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

In addition to Plaintiff's allegations in her amended complaint, the Court will consider the documents attached to Defendant's motion, reply and Plaintiff's sur-reply and referenced in the pleadings: the Note, the Mortgage, the certificate of merger, the Sheriff's deed, and the National Mortgage Settlement (discussed *infra*). (*See* Def.'s Br., Ex. Nos. A-D, Pl.'s SurReply. Ex. 1). Although these documents are technically outside the pleadings, the Sixth Circuit has recognized that the "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997) (citation omitted). In a motion to dismiss, a court may also rely upon matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that in deciding a motion to dismiss a court may consider, "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."). The Mortgage, the certificate of merger, Sheriff's Deed, as well as the National Mortgage Settlement are

5

referenced in Plaintiff's Amended Complaint, response, and sur-reply are central to her claims, and are matters of public record, and therefore these documents will be considered by the Court in evaluating Defendant's Motion to Dismiss.

Pursuant to Federal Rule of Civil Procedure 9(b) a claim of fraud must be pled with particularity. "To meet the particularity requirement, a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, (4) explain why the statements were fraudulent." *Smith v. Bank of America*, 485 F. App'x. 749, 752 (6th Cir. 2012) (quoting *Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008)). To properly allege fraud under Rule 9(b), a plaintiff must "at a minimum, ... allege the time, place[,] and contents of the misrepresentation upon which they relied." *Smith*, 485 F. App'x. at 752 (citation omitted). Finally, a plaintiff must also set forth enough facts such that "it could be concluded that their reliance was reasonable." *Id*. (citing *Novak v. Nationwide Mut. Ins*., Co., 235 Mich. App. 675, 599 (Mich. Ct. App. 1999)).

### III. ANALYSIS

A.      Standing

To the extent that Defendant argues that Plaintiff is without standing to assert any claims regarding the Property, such an argument is without merit. In fact, Defendant's argument was recently addressed and rejected by the United States Sixth Circuit Court of Appeals in *Elsheick v. Select Portfolio Servicing, Inc*., 566 F. App'x 492 (6th Cir. 2014). While *Elsheick* is an unpublished opinion, the Court finds it very persuasive as it speaks directly to this issue and was only recently published.

6

In *Elsheick*, similar to the present action, the Sixth Circuit examined the issue of whether a plaintiff had standing to challenge a foreclosure under Michigan law when the plaintiff had failed to redeem his property within the statutory period.  The Sixth Circuit first differentiated earlier Michigan state-court decisions that touched upon the issue: *Awad v. Gen Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App., Apr. 24, 2012); *Overton v. Mortg. Elec. Registration Sys., Inc*., No. 28950, 2009 WL 1507342, at *1 (Mich. Ct. App., May 28, 2009); *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr. 12, 2007).  *Elsheick* made clear that these earlier state-court opinions "should not be read as Article III standing cases" because

> the rulings in each of those cases ultimately rest upon the fact that the plaintiffs in those matters were unable to satisfy evidentiary burdens that would allow them to challenge the foreclosure sales despite the expiration of the statutory redemption period and the vesting of title in the purchaser of the property.

*Elsheick*, 566 F. App'x at 496.  The Sixth Circuit then concluded that in these types of mortgage foreclosure actions there is both Article III standing and standing "under Michigan law, which requires only that a litigant identify 'a legal cause of action'".  *Elsheick*, 566 F. App'x at 497 (citing *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ*., 487 Mich. 349, 372 (2010)).

Therefore, Defendant's argument has been categorically rejected by the Sixth Circuit and the case law Defendant relies upon has been differentiated by the same.  Indeed, earlier binding case law makes clear that "[w]hether the failure to make this showing is best classified as a standing issue or a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period."  *Conlin v. Mortg. Elec. Registration Sys., Inc*., 714 F.3d 355, 359-60 (6th Cir. 2013).  Accordingly, the Court finds that the Plaintiff who "claim[s] a continuing right to lawful

7

ownership and possession based on defects in the process used by Defendants to divest [her] of those rights" has standing to challenge the process at issue. *Elsheick*, 566 F. App'x at 496-97 (citation omitted).

B.      Wrongful Foreclosure

Defendant also argues that Plaintiff's claim of wrongful foreclosure should be dismissed because the foreclosure itself was proper and Plaintiff failed to plead the requisite fraud or irregularity to warrant the setting aside of a foreclosure.

It is well settled that when a Plaintiff seeks to set aside a foreclosure sale, the Court must first address whether the Plaintiff has "made a sufficient showing of 'fraud or irregularity'" in connection with the sheriff's sale of their properties to 'undo the divestment of [the] property.'" *El-Seblani v. Indymac Mortg. Services*, 510 F. App'x 425, 429 (6th Cir. 2013) (citing *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *5 (6th Cir. Nov. 20, 2012)); *Conlin*, 714 F.3d at 359 ("Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made a 'clear showing of fraud, or irregularity.") (citation omitted).

Pursuant to Michigan law, a homeowner has a statutory period in which to redeem a property sold at a foreclosure sale. *See* MICH. COMP. LAWS § 600.3236-3240(1); *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942). "Once the statutory redemption period lapses, [courts] can only entertain the setting aside of a foreclosure sale where the mortgagor has made a clear showing of fraud, or irregularity." *Colin*, 714 F.3d at 359; *Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 28950, 2009 WL 1507342, at *1 (Mich. Ct. App., May 28, 2009)). "The law in Michigan does not allow an equitable extension of the period to redeem from a

8

statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Overton*, 2009 WL 1507342, at *1 (quoting *Schulthies v. Baron*, 16 Mich. App. 246, 247-48 (Mich. Ct. App. 1969)). "The standards for obtaining such an extension are stringent. Statutory foreclosures will only be set aside if very good reasons exist for doing so." *El-Seblani*, 510 F. App'x at 429 (internal quotation marks and citation omitted). As a result, "[t]he Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997). Further, "[t]he misconduct must relate to the foreclosure procedure itself." *Conlin*, 714 F.3d at 360 (citations omitted).

Additionally, "the presence of defects or irregularities renders the foreclosure sale voidable rather than void *ab initio* and thus is not itself sufficient to set aside the sale." *Spadafore v. Aurora Loan Servs. LLC*, 564 F. App'x 168, 170 (6th Cir. 2014) (citation omitted). "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Mich. Comp. Laws § 600.3204]. *Id*. (quoting *Kim v. JP Morgan Chase Bank, NA*, 493 Mich. 98, 115 (2012)). To demonstrate this prejudice, a plaintiff must show that he or she would have been in a better position to preserve his or her interest in the property without the defendant's noncompliance with the statute. *Id*. (citing *Kim*, 493 Mich. at 115-16).

Here, the record is clear that the redemption period expired some four months prior to Plaintiff filing the instant lawsuit. Therefore, the Plaintiff must allege a strong case of fraud or irregularity relating to the foreclosure procedure itself to maintain an action to set aside the

9

foreclosure sale.  Plaintiff appears to assert three different defects in the foreclosure process to support her claim that the foreclosure of the Property was defective and irregular.[2]  (Am. Compl. 25-28).  The Court addresses each argument in turn.

1.  Failure to properly record the Assignment

Plaintiff alleges that the foreclosure sale was defective because Defendant failed to record its assignment from ABN AMRO in violation of Mich. Comp. Laws § 600.3204(3).[3] (Am. Compl. 28, 31).  Section 3204(3) provides that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale [of the sale] evidencing the assignment of the mortgage to the party foreclosing the mortgage."

While Defendant does not specifically address this issue in its briefing it is clear that Plaintiff's reliance upon § 600.3204(3) is misplaced.  The Sixth Circuit has held that "[u]nder Michigan law, when an interest in a mortgage is transferred through merger there is no need to record the assignment in order for the surviving entity to have authority to foreclose."  *Downey v. Fed. Nat'l Mortgage Assoc.*, 590 F. App'x 587, 591 (6th Cir. 2014) (citing *Gregory v.*

_____

[2] Defendant asserts that Plaintiff does not "even allege any 'fraud or irregularity' in the foreclosure proceedings themselves" beyond the failure of Defendant to provide her with a loan modification, that she was unrepresented by counsel or that Defendant rejected a short sale offer. (Def.'s Br. at 13).  This is not accurate.  Plaintiff specifically asserts in her Amended Complaint that she did not receive a meeting with a counselor in violation of § 600.3205b (¶25); she was not reviewed for a modification in violation of § 600.3205b (¶26); she was not provided proper notice of the foreclosure in violation of § 600.3204, *et seq*. (¶27); and Defendant proceeded with the sheriff's sale without recording the assignment of the mortgage from ABN in violation of § 600.3204(b) (¶28).

[3] The Court notes that section § 600.3204 was amended effective June 14, 2014. However, the relevant subsection 3 of that section has not been altered.

10

*CitiMortgage*, 890 F. Supp. 2d 791, 799-800 (E.D. Mich. 2012)).  "[A]fter a merger, '[t]he title to all real estate and other property and right owned by each entity party to the merger are vested in the surviving entity."  *Id.*, 590 F. App'x 587, 590-91 (quoting Mich. Comp. Laws § 450.1736(9)(b)).  Courts addressing this exact merger between ABN AMRO and CitiMortgage, have found that "the transfer of the note from ABN AMRO to CitiMortgage at the time of the merger is not an assignment that requires recording in order to preserve a clear chain of title." *Lewis v. CitiMortgage, Inc*., No. 13-13152, 2013 WL 5566703, at *5 (E.D. Mich. Oct. 9, 2013) (Cohn, J.) (citing *Gregory*, 890 F. Supp. 2d at 799-800 (holding "where a mortgage is transferred through merger, there is no need to record the assignment in order for the surviving entity to have authority to foreclose, because the surviving entity has 'stepped into the shoes' of the entity that held the mortgage before the merger.")); *see also Gray v. CitiMortgage, Inc*., No. 312971, 2013 WL 2495115, at *2-3 (Mich. Ct. App. June 11, 2013) (holding that CitiMortgage was not required to record the mortgage after the merger with ABN AMRO occurred because "[a]s the [*Kim v. JPMorgan Chase Bank, NA*, 493 Mich. 98 (2012)] Court recognized, such a corporate merger is a transaction 'by operation of law under traditional banking and corporate law[,]' because such a transaction 'occurred without any voluntary or affirmative action by defendant[.]'" (citing *Kim*, 493 Mich. at 111)).

In the present case, there is no dispute that ABN AMRO merged into Defendant in September 2007.  (Def.'s Br. Ex. C).  Therefore, Plaintiff's argument that the subsequent transfer of interest in the mortgage at issue had to be recorded prior to the foreclosure is without merit. Accordingly, the failure of Defendant to record the transfer of the note is not a defect or irregularity relating to the foreclosure procedure.

2. <u>Lack of Notice</u>

Plaintiff makes the general claim that she was not given proper notice of the foreclosure in violation of Mich. Comp. Laws §§ 600.3208 and 600.3220.  Defendant avers in its briefing in a very general manner that "all aspects of the foreclosure by advertisement were proper" and relies upon the Sheriff's Deed, and ostensibly the affidavit of publication,  to evidence that proper notice was given.  (Def.'s Br. at 13-14).

Section 600.3208 provides that notice of a mortgage foreclosure must be published in a newspaper for four successive weeks and "shall be posted in a conspicuous place upon any part of the premises described in the notice" within 15 days after the first publication of the notice. Here, it appears from the affidavits attached to the Sheriff's Deed that Defendant satisfied the notice requirements regarding the foreclosure sale that was scheduled for November 28, 2012, including posting the notice on Plaintiff's door.  (Ex. D, Aff. of Publication stating the notice regarding a foreclosure sale of the Property scheduled for November 29, 2012, was published in the Detroit Legal News on October 29, November 5, November 12, and November 19, 2012; Aff. of Keith Kania providing that notice of the November 29, 2012 sale was posted to the door frame of 19488 Westmoreland Rd. Detroit, MI 48219 on November 8, 2012).[4]  However, it is undisputed that the foreclosure sale <u>actually</u> occurred on March 14, 2013.[5]  (Sheriff's Deed).

---

[4] These affidavits are "presumptive evidence of the facts therein contained."  MICH. COMP. LAWS § 600.3264.

[5] The Sheriff's Deed is silent as to any adjournment and merely states that "a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage that the said premises, or some part of them, would be sold on 14th day of March, 2013, at a public vendue [sic] that being the place of holding the Circuit Court for Wayne County, where the premises are situated..."  (Ex. D, Sheriff's Deed).

Adjournments of a foreclosure sale are governed by Mich. Comp. Laws § 600.3220 which provides that:

> [s]uch sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned. No oral announcement shall be necessary.

Accordingly, "under Michigan law, an adjournment of one week or less is valid if notice of the adjournment is posted before or at the time of the sale and at the place where the sale is to be made. If the adjournment is for more than one week, however, notice must also be published in the newspaper in which the original notice was published". *Bramlage v. Wells Fargo Home Mortgage, Inc*., 144 F. App'x 489, 491 (6th Cir. 2005).

In the present action, Defendant has not made a particular argument rebutting Plaintiff's claim that notice was improper based on § 600.3220. Indeed, considering Plaintiff's allegations true, as this Court must at this stage in the litigation, it appears that Defendant failed to comport with § 600.3220 and either did not properly repost the adjournments and/or failed to properly republish the notice. Regardless, Plaintiff's claim based on this defect still fails because Plaintiff has not alleged any prejudice. Indeed, "a defect in notice renders a foreclosure sale voidable, not void." *Sweet Air Inv. v. Kenney*, 275 Mich. App. 492, 502-03 (2007); *see Conlin*, 714 F.3d at 361. "When 'the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property,' courts uphold a completed foreclosure sale." *Lessl v. CitiMortgage*, 515 F. App'x

13

467, 469 (6th Cir. 2013) (citation omitted).

In the present case, Plaintiff alleges she did not receive "proper notice" under §§ 3220 and 3208 but has not alleged or argued that she was unaware of the foreclosure sale on March 14, 2013. (Am. Compl. ¶ 36(b)). In fact, Plaintiff alleges in her complaint that she made a short sale offer to Defendant during the redemption period and that Defendant advised her that they would continue to work with her during the redemption period. (Am. Compl. at ¶¶ 62-63). Therefore, it appears from Plaintiff's pleadings that she was aware of the foreclosure sale in March 2013 and that the redemption period had begun to run. Significantly, Plaintiff has not alleged that if she had received proper notice of an adjournment she would have been able to redeem the property or that she would have been in a better position to preserve her interest in the property. Rather, Plaintiff has never attempted to redeem the property and did not file this action until some four months after the period of redemption had expired. *See Spadafore*, 563 F. App'x at 171 (holding that there was no prejudice to plaintiffs when the defendant had failed to comply with § 600.3220 and failed to republish notice of the foreclosure sale after adjourning the sale for more than a week when the plaintiffs had notice of the foreclosure proceedings and safe and "made no effort to block the sale or to redeem the property" and they "did not explain what they would have done differently if Aurora had republished the notice of the sale after the alleged adjournment."); *see also Sweet Air Inv.*, 275 Mich. App. at 502-03 (holding that a defect in the adjournment notice only renders a foreclosure sale voidable and finding that the plaintiff could not establish any prejudice when they made no effort to redeem the property or challenge the foreclosure until well after the redemption period.); *Fed. Deposit Ins. Co. v. Torres*, 2014 WL 309787, at *6 (Mich. Ct. App. Jan. 28, 2014) (finding same); *but see Yates v. U.S. Nat'l*

14

*Assoc.*, 912 F. Supp. 2d 478, 491-93 (E.D. Mich. 2012) (Zatkoff, J.) (denying defendant's motion for summary judgment where defendant alleged there were proper week to week adjournments but failed to provide evidence of the same to the court and the foreclosure sale did not occur until more than two years after the original sale was scheduled.).

In her Amended Complaint, Plaintiff alleges that the lack of proper notice somehow led to her failure to receive a "mediation under 3205b".[6]  (Am. Compl. ¶ 36b).  However, § 600.3205b requires that a "borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan, within 30 days after the notice under section 3205a is mailed to the borrower, the borrower shall either contact the person designated under section 3205a(1)(c) directly or contact a housing counselor form the list provided under section 3205a ..."  Mich. Comp. Laws § 600.3205b.

Affidavits attached to the Sheriff's Deed establish that Plaintiff received her § 3205a notice on July 23, 2012 some eight months prior to the foreclosure sale of the Property.  (Ex. D, Sheriff's Deed).  The affidavit provides that "the foreclosed mortgage did not qualify for a loan modification under MCL 600.3205c and as a result the loan is entitled to be foreclosed by advertisement".  (*Id*.).  Indeed, Plaintiff alleges in her Amended Complaint that she did in fact request a meeting with a counselor and she also requested a loan modification in July 2012 but was denied the same (discussed *infra*).  (Am. Compl. ¶¶ 20, 25).  Therefore, Plaintiff's claim that she was prejudiced by Defendant's failure to provide notice of the foreclosure sale because she

---

[6] The Court recognizes that Mich. Comp. Laws § 600.3205b was repealed effective June 30, 2013.  *See* 2012 Mich. Legis. Serv. P.A. 521, (S.B. 1172), Eff. June 30, 2013.  However, the Court analyzes Plaintiff's claims under this statute because it was in effect at the time of the foreclosure which occurred on March 14, 2013.  Additionally, neither party has disputed its application to these claims.

was unable to seek a mediation under 3205b does not have merit and is contradicted by her own pleadings.

Accordingly, the Court finds Plaintiff has failed to allege any plausible prejudice from Defendant's failure to comply with the notice provisions of the foreclosure statutes. Moreover, the allegations in her Amended Complaint directly contradict her claims that she did not or could not seek mediation pursuant to § 3205b where she did in fact receive her § 3205a notice advising her that she could request a meeting (*see* Sheriff's Deed); and she did in fact request a meeting and a loan modification pursuant to § 3205b.

3. <u>Failure to Receive Meeting or Receive a Loan Modification</u>

Plaintiff also alleges in support of her Wrongful Foreclosure claim that the foreclosure on the Property was defective because "Defendant failed and refused to allow Plaintiff a meeting under 3205b, despite her request for same, to attempt to work out a loan modification". (Am. Compl. ¶ 36(a)). Additionally, Plaintiff also appears to allege Defendant failed to review her for a loan modification pursuant to § 600.3205b. (Am. Compl. ¶ 26).

Regardless of whether Defendant wrongfully refused Plaintiff a meeting with a housing counselor pursuant to § 600.3205b or failed to review or grant her a loan modification, Plaintiff's claim fails to state a claim upon which relief can be granted because she cannot evidence prejudice. The Sixth Circuit has held that even assuming that a plaintiff could show that defendants had failed to meet with plaintiff prior to the foreclosure sale, the plaintiff :

> cannot show prejudice as a result of that noncompliance. Plaintiff does not identify any authority for the proposition that if a mortgagor qualifies for a loan modification, the lender is required to provide one. ... nothing in the statute compels the parties to reach an agreement. In any case, the Michigan courts have already held that even if a mortgagor meets the eligibility criteria for a modification, the lender is not required to grant the modification.

16

*Bernard v. Fed. National Mortgage Assoc.*, 587 F. App'x 266, 270 (6th Cir. 2014) (citing *Brown v. Wachovia Mortg.*, No. 307344, 2013 WL 6083906, at * 5 (Mich. Ct. App. Nov. 19, 2013)). Further, in *Bernard*, the Sixth Circuit held that even if the mortgagee is eligible for a modification, and even if the statutes are complied with, "the foreclosure proceeding is not stopped, but merely converted from a foreclosure by advertisement into a judicial foreclosure." *Id.* at 270; *see also Brown*, No. 307344, 2013 WL 6083906, at *5 (holding that in the face of a violation of § 600.3205b and c, "plaintiff's remedy was to seek an immediate injunction and convert the action from foreclosure by advertisement to a judicial foreclosure and finding that such allegations do not implicate the "foreclosure process itself".). Accordingly, there is no prejudice in such a situation because "defendants' compliance with the modification statutes would not have put plaintiff in a 'better position to preserve [her] interest in the property absent [defendants'] noncompliance with the statute.'" *Id.* (quoting *Kim*, 439 Mich. at 115-16).

Additionally, courts in this district have consistently held that the failure to comply with loan modification statute is not an "irregularity" or defect sufficient to set aside a foreclosure. *See Campbell v. Nationstar Mortg.*, --- F. App'x --- , 2015 WL 2084023, at *5 (6th Cir. May 6, 2015) (finding "[a]n alleged irregularity in the loan modification process, however, does not constitute an irregularity in the foreclosure proceeding" and affirming the dismissal of plaintiff's claims based on the defendant's failure to have a meeting with her prior to the foreclosure and failure to evaluate her for a loan modification.) (collecting cases); *Acheampong v. Bank of New York Mellon*, 2013 WL 173472, at *7-8 (E.D. Mich. Jan. 16, 2013), *aff'd*, 531 F. App'x 751 (6th Cir. 2013), cert. denied, --- U.S. --- , 134 S.Ct. 2297 (2014) ("a breach of the loan modification statutes does not preclude [a] bank from foreclosing. Rather, it gives the plaintiff an option to

convert a foreclosure by advertisement to a judicial foreclosure.  Thus, a violation of the loan

modification statute, standing alone, is not enough to show fraud or irregularity under *Kim*.");

*see also Holliday v. Wells Fargo Bank, NA*, 2013 WL 3880211, at *4 (E.D. Mich. July 26, 2013)

(collecting authority and holding that plaintiff had failed to sufficiently allege a "fraud or

irregularity" based on failure to comply with § 600.3205c).

Therefore, the Court finds that Plaintiff has failed to state a claim based on Defendant's

alleged failure to review her for a loan modification or provide her a meeting with a housing

counselor in violation of Mich. Comp. Laws  § 600.3205b.

4. Laches

Defendant argues that Plaintiff's claim for wrongful foreclosure should be denied based

on the doctrine of laches because Plaintiff waited more than four months until after the

redemption period to challenge the foreclosure sale.  However, as the Court finds that Plaintiff's

wrongful foreclosure claim should be dismissed for failure to state a claim when she cannot and

has not alleged prejudice from the alleged defects and also because Defendant's interest in the

mortgage did not need to be recorded, the Court need not reach this issue.  However, given the

fact that the Plaintiff is a self-proclaimed elderly, retired woman with health issues that

precipitated her foreclosure and financial distress and who was without legal counsel throughout

the foreclosure process and redemption period, it does not appear that laches would be

applicable.  *See Wayne Cnty v. Wayne Cnty. Ret. Comm'n,* 267 Mich. App. 230, 252 (2005)

(noting that the doctrine of laches applies to delays in asserting legal rights that are "unexcused

or unexplained".); *see also Jackson Inv. Corp. v. Pittsfield Prods., Inc*., 162 Mich. App 750, 756-

57 (1987) (affirming the application of the doctrine of laches when the plaintiff was "a business

18

entity active in real estate transactions and was represented by counsel throughout the foreclosure process" and the circuit court had previously found that it had the "means, skill and knowledge to protect its interest more vigorously.").

    5. <u>Opportunity to Amend</u>

Plaintiff states in her response that "[i]f the Court determines that Plaintiff is missing some element necessary to Count I, the appropriate remedy would be allow Plaintiff to amend." (Pl.'s Resp. at 12).

It is well-settled that a motion to amend may be denied when it such an amendment would be futile and not survive a motion to dismiss. *See Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) ("'A motion to amend a complaint should be denied if the amendment is brought in fad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'").  Here, Plaintiff has not filed a separate motion to amend, nor has Plaintiff provided any additional factual allegation that she would submit through an amended complaint.  In light of these facts, the Court finds Plaintiff's request to amend is futile.  There is nothing in Plaintiff's response and sur-reply that indicates what new allegations could be or would be asserted to rescue her claims from dismissal. *Lewis v. Wheatley*, 528 F. App'x 466, 469 (6th Cir. 2013) (affirming the district court's denial of a request to amend as futile when the plaintiffs requested to amend a complaint in their response to a motion to dismiss, failed to file a separate motion "but sought such relief only in the alternative", and did not provide "any additional factual allegations that they would submit in an amended complaint".)

C.      Breach of Third Party Beneficiary Contract

Plaintiff alleges that Defendant breached its contractual duties owed to Plaintiff as "third-party beneficiary" to a consent judgment entered in the United States District Court for the District of Columbia in the case of *United States v. Bank of America Corp., et al.*, No. 12-00361 (D.D.C. Apr. 5, 2012) ("Consent Judgment").[7]  (Am. Compl. ¶¶ 44-49).  This Consent Judgment resulted from a complaint brought by the United States Department of Justice and the attorney generals of forty-nine states and the District of Columbia against multiple mortgage servicers, including Defendant CitiMortgage, and alleged various foreclosure abuses.   All of the parties reached a settlement in the matter (also commonly referred to as the "National Mortgage Settlement") and five separate consent judgments were entered into and valued at a total of $25 billion.  *See U.S. v. Bank of Amer.*, 922 F. Supp. 2d 1 (D.D.C. 2013) (discussing the terms of the settlements in the context of a motion to enforce the consent judgment brought by Wells Fargo, a party to the consent judgment); *see also Rehbein v. CitiMortgage, Inc*., 937 F. Supp. 2d 753, 760-61 (E.D. Va. 2013); (Def.'s Reply, Ex. 2, Consent Judgment).

Plaintiff claims that she is a "third-party beneficiary to the National Mortgage Settlement

--------

[7] Plaintiff affirmatively asserts in her response that she is <u>not</u> asserting a cause of action pursuant to HAMP.  (Pl.'s Resp. at 12).  Plaintiff's briefing makes clear that she is only asserting a claim "for breach of contract relat[ing] to a consent judgment signed by Defendant and entered [sic] the United State[s] District Court for the District of Columbia, where Plaintiff is a third-party beneficiary." (Pl.'s Resp. at 12).  Further, the Court recognizes that such a cause of action would fail to set forth a claim upon which relief can be granted because it there is no private right of action under HAMP.  *See Hart v. Countrywide Home Loans, Inc*., 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (holding there is no implied or express private right to sue under HAMP and collecting authority); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 558 n. 4 (7th Cir. 2012) (summarizing the types of claims brought based on Home Affordable Mortgage Program, 12 U.S.C. § 5219(a), part of TARP noting "Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers" and collecting cases).

and is entitled to enforce the terms" pursuant to Mich. Comp. Laws § 600.1405 and seeks to enforce its terms.  (Am. Compl. ¶ 46).

The Supreme Court has long held as a general matter that consent judgments are "not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975); *see also Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992) ("A consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it.").  Under Michigan law, a "third party beneficiary of a promise stands in the shoes of the promisee and is afforded the right under the common law and Mich. Comp. Laws Ann. 600.1405 ... to enforce the promise against the promisor."  *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1098 (6th Cir. 1979).  "A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person."  MICH. COMP. LAWS § 600.1405(1).  However, "[n]ot every person incidentally benefitted by a contractual promise has the right to sue for breach of that promise ... only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor."  *Johnson v. Doodson Ins. Brokerage of Texas, LLC*, 1 F. Supp. 3d 776, 787 (E.D. Mich. 2014) (citing *Schmalfeldt v. N. Point Ins. Co.*, 469 Mich. 422, 427 (2003)).  The Michigan Supreme Court has explained:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person. By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertaking encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.

*Schmalfeldt*, 469 Mich. at 428 (internal citations omitted).  "An objective standard is to be used

21

to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Id*. (internal citation omitted).

Plaintiff has failed to allege or identify any provisions of the Consent Judgment that demonstrate that there was a contractual relationship between the United States and mortgage companies that was meant to benefit her *directly*. Plaintiff argues that the Consent Judgment "expressly benefitted Plaintiff as a consumer who was seeking loss mitigation and subject to foreclosure proceedings under the mortgage held by Defendant." (Pl.'s Sur-reply at 2). Plaintiff relies upon the language from Exhibit A of the Consent Judgment which outlines the "loss mitigation" procedures that defendant services must follow when dealing with "eligible borrowers" under the program, apparently attempting to draw the conclusion that the consent decree is intended to benefit a class of "eligible borrowers". (*Id*. at Ex. 1, excerpts of the consent judgment). Plaintiff also notes that Exhibit E to the Consent Judgment states: "[n]othing in this Consent Judgment shall be deemed to interfere with existing consumer complaint resolution processes, and the Parties are free to bring consumer complaints to the attention of Servicer for resolution outside the monitoring process." (Pl.'s Sur-reply, Ex. 2, E-14). Plaintiff argues that this language indicates intent to allow "consumers, i.e. third-party beneficiaries, to bring their own actions to enforce the contract." (Pl.'s Sur-reply at 3).

The Court rejects Plaintiff's arguments. Plaintiff "cherry picks" her language from the Consent Judgment. Indeed, Exhibit E outlines the "enforcement" of the Consent Judgment and provides:

> This Consent Judgment shall be filed in the U.S. District Court for the District of Columbia ("the Court") and shall be enforceable therein. ...Enforcing Authorities.

22

> Servicer's obligations under this Consent Judgment shall be enforceable solely in
> the U.S. District Court for the District of Columbia.  An enforcement action under
> this Consent Judgment may be brought by any Party to this Consent Judgment or
> the Monitoring Committee.

(Ex. E to Consent Judgment).  This language does not indicate that Plaintiff was an intended

beneficiary to the consent judgment.  Rather, the language specifies that "[a]ny enforcement

action under this Consent Judgment may be brought by any Party to this Consent Judgment or

the Monitoring Committee.  Third-party borrowers are conspicuously absent from this list."

*Rehbein*, 937 F. Supp 2d at 762.  Additionally, Plaintiff has failed to cite *any* authority holding

that individual borrowers are intended third-party beneficiaries to the Consent Judgment or

allowed individual borrowers to bring an enforcement action under the Consent Judgment.

Indeed, it appears that numerous courts have found just the opposite.  *See Chavez v. Bank of Am.,*

*NA*, No. 3:13-CV-498, 2014 WL 3052491, at *2 (E.D. Tenn. July 3, 2014) (collecting cases)*; see*

*also Jawad v. Hudson City Saving Bank, FSB*, No. 14-13614, 2014 WL 7272342, at *6 (E.D.

Mich. ) (Levy, J.) (rejecting a plaintiff's reliance on the National Settlement Agreement in a

negligence claim because the plaintiff could evidence he was a party and therefore he could not

enforce its terms) .

Finally, the Court notes that the Consent Judgment provides by its explicit terms a

specific forum for the designated parties (the monitoring committee or the direct parties to the

consent judgment) to bring enforcement actions.  (*See* Ex. E, Consent Judgment at E-14, E-15).[8]

Therefore, other courts have concluded that even if a borrower was a party to the Consent

---

[8] The entire National Mortgage Settlement is publically available online,
http://www.nationalmortgagesettlement.com/ and
https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_Citibank-4-11-12.pdf (last visited on
June 11, 2015).

23

Judgment the only court with jurisdiction to enforce the Consent Judgment is the United States District Court for the District of Columbia. *See Parker v. Chase Home Finance, LLC*, No. 11-11540, 2013 WL 5874614, at * 2 (E.D. Mich. Oct. 31, 2013) (O'Meara, J.) (recognizing that "this court is without jurisdiction to enforce the National Mortgage Settlement, which is enforced through a consent judgment entered in the United States District Court for the District of Columbia."); *Habib v. Bank of Am., NA*, No. 13-10853, ECF No. 16, at *6-7 (E.D. Mich. July 15, 2013) (Drain, J.) (relying upon *Blue Chip* to find that the plaintiff was not a party to the Consent Judgment and therefore could not enforce its terms and noting that the express language of the Consent Judgment provides that it must be enforced in the United States District Court for the District of Columbia); *Chavez, NA*, No. 3:13-CV-498, 2014 WL 3052491, at *3 (holding that plaintiff could not assert a claim under the National Mortgage Settlement because he was not a party and finding that pursuant to its terms the proper venue for enforcement was the United States District Court for the District of Columbia).

In sum, Plaintiff's claim that she is an intended third-party beneficiary to the National Mortgage Settlement as set forth in the Consent Judgment is without merit.

D.    Fraud/Misrepresentation

Plaintiff alleges that Defendant "repeatedly made material misrepresentations to Plaintiff in order to avoid providing Plaintiff with a permanent loan modification" (Am. Compl. ¶ 51). Specifically, Plaintiff alleges that Defendant made a number of material misrepresentation to her, including: she would be reviewed for a loan modification under HAMP; she would be provided a loan modification if she qualified; that the Property would not be sold at a sheriff's sale while she was being reviewed for a loan modification; and that Defendant would continue to review

her for Loss Mitigation during the redemption period of her foreclosure.  (Am. Compl. ¶¶ 52, 62)

Defendant argues that Plaintiff's claims of fraud and misrepresentation should be dismissed because such claims violate the statute of frauds and in the alternative because Plaintiff failed to plead these claims with the specificity required by Fed. R. Civ. P. 9(b).[9] Plaintiff does not specifically address Defendant's argument that her Fraud and Misrepresentation claims are barred by the Statute of Frauds.

The Court finds that Plaintiffs' claim for fraud and fraudulent misrepresentation are, in fact, barred by the statute of frauds.  Pursuant to Michigan's statute of frauds, a claim against a financial institution to enforce a promise or agreement to "renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, *or any other financial accommodation*" is barred unless that agreement is in writing and signed by the party to be charged with the agreement.  MICH. COMP. LAWS § 566.132(2) (emphasis added).  The Michigan Court of Appeals has held that this provision of the statute of frauds plainly provides that no matter how the claim is labeled, a party is precluded from bringing any action against a financial institution to enforce an oral promise.  *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550 (Mich. Ct. App. 2000).  In other words, "a financial institution's promise regarding financial accommodation, like a loan modification, is void unless it is (1) in writing and (2) signed with an authorized signature by the party to be charged with the promise." *Trombley v. Seterus, Inc.*, --- F. App'x --- , 2015 WL 3620412, *3 (6th Cir. Jun. 11, 2015); *see also William v. Pledged Property II, LLC*, 508 F. App'x 465, 469 (6th Cir. 2012) cert. denied, --- U.S. —, 134

---

[9] The Court does not reach the issue of whether Plaintiff has pleaded her claims with the requisite particularity under Fed. R. Civ. P. 9(b) because the Court finds that Plaintiff's fraud and misrepresentation claims are barred by the Statute of Frauds.

S. Ct. 98 (2013) (finding that "the Michigan Court of Appeals has clearly interpreted §
566.132(2) to include promises to delay foreclosure sales, holding that 'an agreement to delay a
foreclosure sale is an agreement to make a financial accommodation.'"); *Barclae v. Zarb*, 300
Mich. App. 455, 469 (2013) (relying on *William* and finding same)

The Court finds that Plaintiff's allegations regarding Defendant's fraudulent
misrepresentations all relate, at their core, to Defendant's alleged promises of financial
accommodations; i.e. delaying a foreclosure sale or promises to review or approve a loan
modification. (Am. Compl. ¶¶ 52-62). Significantly, none of these promises were made in
writing or signed by Defendant. While Plaintiff asserts in her Amended Complaint that she
made payments in accordance with a Special Forbearance Agreement and that she retains that
agreement, she does not allege that Defendant breached the Special Forbearance Agreement, that
it contained any material misrepresentations, or that the agreement was signed by Defendant.
(Am. Compl. ¶ 56). Therefore, Plaintiff's claims are barred pursuant to the Statute of Frauds.

Finally, Plaintiff appears to argue that the Statute of Frauds is satisfied because the
Defendant is a signatory to the National Mortgage Settlement and that Consent Judgment
constitutes a signed writing. However, such an argument must be rejected for the same reasons
why Plaintiff's breach of contract claim based on the National Mortgage Settlement is without
merit, as examined *supra*.

E.     Declaratory Relief

Finally, Plaintiff requests declaratory relief from the Court in the form of quieting title.
"[I]n order to bring an equitable action to quiet title under M.C.L. 600.2932, [plaintiff] has the
burden of showing: '(a) the interest [she] claims in the premises; (b) the interest the [defendant]

26

claim[s] in the premises; and (c) the facts establishing the superiority of [her] claim." *Trombley*,

--- F. App'x --- , 2015 WL 3620412, at * 6 (citing Mich. Ct. R. 3.411(B)(2) and *Khadler v. PNC*

*Bank, N.A.*, 577 F. App'x 470, 477-78 (6th Cir. 2014)); *see also Beulah Hoagland Appleton*

*qualified Personal Residence Trust v. Emmet Cnt'y Rd Comm'n*, 236 Mich. App. 546, 550

(1999).

     In the present case, Defendant has presented a Sheriff's Deed to the Property.  Pursuant

to Mich. Comp. Law § 600.3236, the Sheriff's Deed became an operative deed upon the

expiration of the period of redemption.  Plaintiff appears to allege her title is superior because

she retains possession of the home, and because Defendant's foreclosure upon her home was

wrongful.  (Pl.'s Resp. at 15).  "Michigan courts have recognized that an action to quiet title can

be a remedy for fraud".  *Khadher*, 577 F. App'x at 478.  However, as the Court concludes that

Plaintiff's claims of wrongful foreclosure, breach of contract, and fraud and misrepresentation

claims fail, Plaintiff's claim of quiet title must also fail.  *See Trombley*, at * 6 (dismissing a

plaintiff's quiet title claim when it was "predicated on her breach of contract and promissory

estoppel claims [and] [h]aving found that [her] breach of contract and promissory estoppel

claims fail, we hold that her quiet title claim also cannot be sustained.").

IV. CONCLUSION

     For all these reasons, the Court GRANTS Defendant's Motion to Dismiss the Amended

Complaint.  (ECF No. 12).

     IT IS SO ORDERED.

                  s/Paul D. Borman
                  PAUL D. BORMAN
                  UNITED STATES DISTRICT JUDGE

Dated:  July 13, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or
party of record herein by electronic means or first class U.S. mail on July 13, 2015.

s/Deborah Tofil
Case Manager